UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

BERNARD SEEGERS,

                  Plaintiff,

                  v.

JASPER COUNTY, MARY SCHEURICH in
her official capacity as Director of Planning
and Development, and JAMES WALSTRA
in his official capacity as planning
commission member,

                  Defendants.

CAUSE NO.: 4:17-CV-42-TLS-JEM

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's Second

Amended Complaint [ECF No. 36], seeking dismissal for lack of subject matter jurisdiction and

failure to state a claim. The Plaintiff filed a response [ECF No. 39], and the Defendants filed a

reply [ECF No. 40]. Because the Plaintiff's § 1983 claims are barred by the statute of limitations,

the Court grants the motion, dismisses the federal claims with prejudice, and relinquishes its

supplemental jurisdiction over the state law claim.

**BACKGROUND**

On May 18, 2017, Plaintiff Bernard Seegers filed a pro se Complaint [ECF No. 1] against

Jasper County, Indiana, and a motion to proceed in forma pauperis [ECF No. 2]. On May 22,

2017, the Court denied the in forma pauperis motion, finding that the Complaint failed to

demonstrate that the Court had subject matter jurisdiction and granting the Plaintiff leave to file

an Amended Complaint. *See* ECF No. 3. On June 16, 2017, the Plaintiff voluntarily dismissed

the case without prejudice. *See* ECF No. 4. On August 10, 2017, the Plaintiff paid the filing fee

and filed a pro se Amended Complaint [ECF No. 6]; however, the Court struck the Amended

Complaint because the Plaintiff's voluntary dismissal had terminated the case, *see* ECF No. 19.

Counsel subsequently entered an appearance for the Plaintiff, and the Court granted a motion to

reopen the case. *See* ECF Nos. 23, 24, 25. On July 18, 2018, the Plaintiff, by counsel, filed a

Second Amended Complaint [ECF No. 26], alleging the following facts.

Defendant James Walstra has a private interest in a company named Walstra Trucking,

which is in the business of hauling materials such as dirt and sand. Second Am. Compl. ¶¶ 11–

12, ECF No. 26. Mr. Walstra is a commissioner of the Jasper County Board of Commissioners

("Commissioners"), a member of the Kankakee River Basin Commission, and a member of the

Jasper County Drainage Board. *Id*. at ¶¶ 13–15.

Sometime in or before 2004, the Plaintiff sold a portion of his several hundred acres of

land to a neighbor to raise money to develop a different 90 acres of his land. *Id.* at ¶ 16. In 2004,

the neighbor indicated that he would not oppose the Plaintiff's proposed subdivision, and, in

2005, the Commissioners approved a re-zone from Agricultural to R1 for the property the

Plaintiff intended to develop into a subdivision. *Id.* at ¶¶ 17–18.

On September 14, 2005, the Plaintiff complained to the Commissioners that Walstra

Trucking was removing sand ridge from a different lot next to his property, and, on September

28, 2005, the Commissioners sent a cease and desist notice to stop the sand removal. *Id*. at ¶ 19.

In October 2005, Mr. Walstra had personal conversations with the Commissioners to advise that

the sand mining was not unlawful, and the trucking continued. *Id*. at ¶ 20. Walstra Trucking

made hundreds of thousands of dollars from the removal of the sand. *Id.* at ¶ 21. On October 17,

2005, the Plaintiff asked the Commissioners for guidance regarding the sand mining he opposed,

and he received a letter from then-counsel for the Commissioners advising that "there was no

wrong application of the regulations of concern" to the Plaintiff. *Id*. at ¶ 22. The sand mining

continued. *Id*. at ¶ 23.

In January 2008, the Plaintiff's engineer sought approval for the subdivision plans from

the Jasper County Planning Commission. *Id.* at ¶ 24. The subdivision plan was denied based on

what the Commissioners believed to be poor drainage planning. *Id.* at ¶ 25. However, the plans

were approved by the Drainage Board. *Id*. The Plaintiff appealed the denial to the Jasper County

Circuit Court, and, in December 2008, the Plaintiff lost his appeal. *Id*. at ¶¶ 26, 27. The Plaintiff

went bankrupt from the cost of planning the subdivision. *Id*. at ¶ 28. In 2011, the Plaintiff

conveyed to his neighbor (the same neighbor who previously purchased property from the

Plaintiff) the 90 acres he had planned to develop as a subdivision. *Id.* at ¶ 29.

In March 2015, the neighbor removed a ditch from the 90 acres, which the Plaintiff

reported to the Planning and Development Commission Director. *Id.* at ¶ 30. On March 23, 2015,

the Commissioners sent a cease and desist notice to stop removing sand from the 90 acres. *Id*. at

¶ 31. On May 2, 2015, the Plaintiff learned that he was required to obtain flood insurance

because of the effect on his property of that sand mining. *Id.* at ¶ 32. At some point, the neighbor

petitioned the Commissioners to do sand mining. *Id.* at ¶ 33. In January 2016, the Plaintiff

communicated with the Commissioners, hoping they would deny the petition. *Id*. at ¶ 34. In

January 2017, the neighbor "request[ed] to continue the hearing on the petition and the

Commissioners den[ied] the request." *Id.* at ¶ 35. The Plaintiff alleges that, "[a]t this time it

appears to [me] that something is amiss because this is exactly the sort of bad decision making

that occurred in 2005 when Walstra Trucking was told to cease and desist." *Id*.

On April 24, 2017, the Plaintiff inadvertently mailed his original Complaint in this case

to the United States Attorney's Office in Hammond. *See* Compl. 6–12, ECF No. 1; *see also*

Second Am. Compl. ¶ 36. He subsequently filed his pro se Complaint with this Court on May 18, 2017. On June 7, 2017, the Director of the Plan Commission wrote to the Plaintiff, explaining why Mr. Walstra had been allowed to mine without a permit in 2005. Second Am. Compl. ¶ 37. "[T]his is the first time that [the Plaintiff] confirm[ed] what he felt in January of 2017 i.e. that the Defendant Walstra lied to the government to achieve personal gain." *Id*. The Plaintiff alleges that it is the Defendants' official custom and policy to allow their members to treat the Plaintiff and the public wrongly for reasons of a personal nature unrelated to their official duties and that it is the Defendants' official custom and policy to ignore the unethical and conflicting private interests of their members that harm the Plaintiff and the public. *Id.* at ¶¶ 38, 39.

In Count I, brought pursuant to 42 U.S.C § 1983, the Plaintiff asserts equal protection and due process violations under the Fourteenth Amendment to the United States Constitution. The Commissioners knew that drainage was a problem on the property and denied the Plaintiff's subdivision plan due to concerns over drainage. *Id.* at ¶¶ 40, 41. However, "[o]n January 23, 2017, the Commissioners failed to deny plans by another for the . . . property, formerly owned by [the Plaintiff], despite the fact that the drainage impact would be worse than Plaintiff's plans." *Id.* at ¶ 42. The Plaintiff alleges that Commissioners, including Mr. Walstra, were influenced by the Plaintiff's "previous animosity toward them for making bad decisions, his complaining of their poor ethics, and his general stubbornness to have them do their jobs right." *Id*. at ¶ 43. And, he alleges that the Commissioners treated him differently in violation of constitutional rights because of the his "animosity, attempts to prevent personal gain of Commissioners through their private business dealings, and his other past complaints and lawsuits made against the Commissioners." *Id.* at ¶¶ 44–47. In addition, the Plaintiff alleges that the decisions affecting his property were based on the Defendants' "informal and irrational rules" and that the rules were

applied differently to Mr. Walstra and his neighbor. *Id.* at ¶ 50. The Plaintiff alleges that he has

been damaged because his property is now subjected to flooding as a result of the sand mining

and he now has to pay for flood insurance. *Id.* at ¶¶ 48–49.

Count II alleges civil conspiracy to deprive the Plaintiff of his constitutional rights,

alleging that Mr. Walstra and the neighbor conspired to develop sand mining and hauling near

the Plaintiff's home and on his former property that he lost due to the Defendants'

unconstitutional acts. *Id.* at ¶ 53. The Plaintiff alleges that Mr. Walstra was able to deprive him

of his constitutional rights by influencing the boards and commissioners who made decisions

regarding the involved properties. *Id*. at ¶ 54. The Plaintiff further alleges that, because of the

conspiracy, he was deprived of his land, his home has been damaged due to flooding, and he has

lost money due to the failed development and increased flood insurance costs. *Id.* at ¶ 55.

Finally, Count III asserts an equal protection violation under the Indiana Constitution,

alleging that, because the Plaintiff "was politically opposed to the decisions of the

Commissioners, complaining about the Commissioners openly, calling them thieves, and calling

them unethical, he was not given equal protection when he appeared before these

Commissioners." *Id*. at ¶ 57.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court may dismiss a claim for

lack of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443

(7th Cir. 2009); Fed. R. Civ. P. 12(b)(1). In considering such a motion, the "district court must

accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of

the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir.

2007) (quoting *Long v. Shorebank Dev. Corp*., 182 F.3d 548, 554 (7th Cir. 1999)). In addition,

USDC IN/ND case 4:17-cv-00042-TLS-JEM   document 44   filed 02/05/21   page 6 of 19

"[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Long*, 182 F.3d at 554). The burden of proof to demonstrate subject matter jurisdiction is on the party asserting jurisdiction. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

A motion to dismiss brought under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in favor of the plaintiff. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Surviving a Rule 12(b)(6) motion "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

In the motion to dismiss, the Defendants argue that the Plaintiff's federal claims are barred by the statute of limitations, that the Plaintiff has failed to state a claim of a violation of his federal civil rights, and that this Court lacks subject matter jurisdiction. The Court begins with its subject matter jurisdiction as a federal court may not resolve the merits of a case until it

is certain it has subject matter jurisdiction over the controversy. *See Christianson v. Colt Indus.*

*Operating Corp.*, 486 U.S. 800, 818 (1988).

### A.      Subject Matter Jurisdiction

Seeking dismissal for lack of subject matter jurisdiction, the Defendants argue that the

Court lacks diversity jurisdiction because all parties are citizens of Indiana and that the Second

Amended Complaint does not present a federal question. The Plaintiff does not contest the lack

of diversity jurisdiction but responds that his claims under 42 U.S.C. § 1983 for violations of his

federal constitutional rights satisfy federal question jurisdiction. The Defendants drop the

argument in their reply brief. As asserted in the Second Amended Complaint's jurisdictional

statement, the Court has federal question jurisdiction over the § 1983 claims under 28 U.S.C.

§ 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

More specifically, Count I alleges violations of the Plaintiff's rights to equal protection and due

process under the United States Constitution. To the extent the Defendants argue that the Court

lacks subject matter jurisdiction because the Plaintiff cannot state a claim for relief under § 1983,

those arguments are properly considered under Rule 12(b)(6). *See, e.g.*, *Hallinan v. Fraternal*

*Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820–21 (7th Cir. 2009).

### B.      The Plaintiff's § 1983 Claims

The Defendants also seek dismissal under Rule 12(b)(6), arguing first that the § 1983

claims are barred by the applicable statute of limitations. The Seventh Circuit Court of Appeals

has recognized that a motion to dismiss based on the statute of limitations defense qualifies as a

motion to dismiss for failure to state a claim. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir.

2012) (citing *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). Thus, if the factual allegations

of the complaint establish that the suit is time-barred, a plaintiff may plead himself out of court.

*See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Here, the Plaintiff alleges violations of

his Fourteenth Amendment equal protection and substantive due process rights when the

Defendants, motivated by ill will and without a rational basis, denied his plan to develop a

subdivision on his property. These § 1983 claims are barred by the statute of limitations because

the claims accrued in 2008 when the Plaintiff's plan to develop the subdivision was denied and

there are no equitable grounds on which to toll the limitations period.

1.      *Legal Standards for the § 1983 Equal Protection and Substantive Due Process Claims*

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

As an initial matter, "it is important to remember that 'federal courts, as [the Seventh

Circuit Court of Appeals has] explained time and again, are not zoning boards of appeal.'" *Miller*

*v. City of Monona*, 784 F.3d 1113, 1119 (7th Cir. 2015) (quoting *CEnergy–Glenmore Wind*

*Farm # 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014)). Thus, "[s]tate and local

land-use decisions are entitled to great deference when constitutional claims are raised in federal

court." *Id.* (quoting *CEnergy-Glenmore*, 760 F.3d at 487). Moreover, "certain forms of state

action—as with [certain land use decisions]—'involve discretionary decisionmaking based on a

vast array of subjective, individualized assessments.'" *Id.* (quoting *Engquist v. Or. Dep't of*

*Agric.*, 553 U.S. 591, 603 (2008)).

The Equal Protection Clause of the Fourteenth Amendment is "a guard against state and

local government discrimination on the basis of race, national origin, sex, and other class-based

distinctions." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). But it also protects

"individuals against purely arbitrary government classifications, even when a classification

consists of singling out just one person for different treatment for arbitrary and irrational

purposes." *Id.* Under a so-called "class-of-one equal protection theory, a plaintiff must allege that

he has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Cannici v. Village of Melrose Park*, 885 F.3d 476,

480 (7th Cir. 2018) (internal quotation marks and citation omitted). Because the Plaintiff does

not allege membership in a protected class, he is presumed to be bringing a class-of-one equal

protection claim. *See id.* "Normally, a class-of-one plaintiff will show an absence of rational

basis by identifying some comparator—that is, some similarly situated person who was treated

differently." *Miller*, 784 F.3d at 1120 (quoting *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755

F.3d 839, 845 (7th Cir. 2014)).[1] However, the lack of a comparator does not "doom" a claim

because "[p]laintiffs alleging class-of-one equal protection claims do not need to identify specific

examples of similarly situated persons in their complaints." *Id.* (citing cases) ("[W]e have

recently reversed the rejection of similar claims, despite the lack of a comparator, when plaintiffs

were able to exclude rational explanations for why local officials targeted them.").

     In the state and local land-use context, the court in *Miller* explained that "the rule that

people should be treated alike, under like circumstances and conditions is not violated when one

person is treated differently from others, because treating like individuals differently is an

accepted consequence of the discretion granted" and that "allowing a challenge based on the

arbitrary singling out of a particular person would undermine the very discretion that such state

---

[1] "To be similarly situated, a comparator must be 'identical or directly comparable' to the plaintiff 'in all material respects.'" *Miller*, 784 F.3d at 1120 (quoting *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010); citing *Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

officials are entrusted to exercise." *Id*. at 1119–20 (internal quotation marks omitted) (quoting

*Engquist*, 553 U.S. at 603). As a result, even if a court disagrees "with a land-use decision made

by local officials, there is no class-of-one claim unless the plaintiff is able to show that there was

no rational basis for the officials' actions." *Id*. at 1120 (citing *Discovery House, Inc. v. Consol.*

*City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003)).

The Due Process Clause of the Fourteenth Amendment "has long been understood to

have a substantive as well as a procedural dimension. A legal rule that deprives a person of

property has to be rational." *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 711

(7th Cir. 2004). The Plaintiff appears to bring a substantive due process claim, alleging that his

development plan was denied because of the Defendants' "informal and irrational rules." Second

Am. Compl. ¶ 50.[2] "[T]he Supreme Court has acknowledged at least the theoretical possibility

that a land-use decision—if it was 'arbitrary in the constitutional sense' and deprived the plaintiff

of property—could constitute a deprivation of property without substantive due process of law."

*CEnergy–Glenmore*, 769 F.3d at 488 (quoting *City of Cuyahoga Falls v. Buckeye Cmty. Hope*

*Found.*, 538 U.S. 188, 198–99 (2003)). The Seventh Circuit has said that, to implicate

substantive due process, "a land-use decision must 'shock the conscience'" or "must have been

'arbitrary and capricious' or 'random and irrational,'" and the Supreme Court has said that the

"decision must be arbitrary to the point of being 'egregious.'" *Id*. (citations omitted).

2.      *Statute of Limitations for the § 1983 Claims*

For claims brought under 42 U.S.C. § 1983, federal courts apply the forum state's statute

of limitations for personal injury claims. *See Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir.

---

[2] The Plaintiff does not appear to be bringing a procedural due process claim. Even if he were, the claim
would likewise have accrued in 2008 and would be barred by the statute of limitations.

2020) (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019)). In Indiana, the applicable

statute of limitations period is two years. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir.

2012); Ind. Code § 34-11-2-4(a). Although state law supplies the tolling rules, the accrual of

§ 1983 claims is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also*

*Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019). Accrual of a § 1983 claim occurs

"when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can

file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal citations and quotation marks

omitted); *see also Savory*, 947 F.3d at 414. In other words, a § 1983 claim accrues "when the

plaintiff knows or should know that his or her constitutional rights have been violated."

*Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir.

2005); *see also Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) (quoting *Serino v.*

*Hensley*, 735 F.3d 888, 591 (7th Cir. 2013)). "To determine when the claim accrues, a court must

first identify the plaintiff's injury and then determine when the plaintiff could have sued for that

injury." *Logan*, 644 F.3d at 582 (citing *Behavioral Inst. of Ind., LLC*, 406 F.3d at 929).

3.      *Accrual of the Plaintiff's § 1983 Claims*

        With these standards in mind, the Court turns to the Plaintiff's injury. The Plaintiff

alleges in the Second Amended Complaint and argues in his brief that his constitutional rights

were violated when the Commissioners, influenced by the Plaintiff's previous animosity toward

them and motivated by ill will and personal gain, denied his subdivision development plan

without a rational basis. *See* Second Am. Compl. ¶¶ 43–50; Pl.'s Br. 3–5. The Plaintiff began the

process of planning the subdivision in 2005, his subdivision plan was denied by the Planning

Commission in January 2008 because of drainage issues, and he lost his appeal in state court on

11

December 31, 2008. The injury—the denial of his subdivision plan by the Planning Commission because of the members' improper motive and lack of a rational basis—occurred in 2008.

The Plaintiff could have sued for the injury when his subdivision plan was denied in 2008 because he had knowledge of all the Defendants' actions that allegedly harmed him. *See Logan*, 644 F.3d at 582 ("Although Logan claims that he was not aware of the defendants' conspiracy, he was aware of every act allegedly committed pursuant to that conspiracy that injured him."). First, he was aware at that time in 2008 that the Drainage Board had approved his development plan, which calls into question the rationality of the Planning Commission's decision to deny his plan solely because of drainage issues. *Id.* at ¶ 25. Second, he was aware of his own behavior and statements in the years leading up to the denial of his plan in 2008, which he describes as his "previous animosity toward [the Commissioners] for making bad decisions, his complaining of their poor ethics, and his general stubbornness to have them do their jobs right." Second Am. Compl. ¶¶ 43, 46. The Plaintiff alleges that the Commissioners were influenced in their decision in 2008 based on the Plaintiff's past actions. *Id*. at ¶ 43. Third, he knew of Mr. Walstra's sand mining activities on adjacent land in 2005 and of Mr. Walstra's private interest in profiting from sand mining, that Mr. Walstra was aware of the Plaintiff's complaints regarding Mr. Walstra's sand mining operations, and that, by speaking informally with the Commissioners, Mr. Walstra was able to have the 2005 sand mining cease and desist order revoked. *Id*. at ¶¶ 19–23, 44–46.

The Plaintiff attempts to extend the life of his claim by arguing that it was not until the events in January and June 2017 when he "actually came to know" that Mr. Walstra had allegedly lied to achieve personal gain and that the Defendants had conspired to allow Mr. Walstra's unlawful trucking. Pl.'s Br. 4, 6. He alleges that he did not know he was treated "differently" by the Defendants until January 2017 when he learned that the Commissioners

"failed to deny" his neighbor's plan to do sand mining on the same property he had intended to develop as a subdivision, even though the sand mining had a worse effect on drainage than the Plaintiff's proposed subdivision. Second Am. Compl. ¶¶ 42, 46; Pl.'s Br. 4. He also alleges that the letter in June 2017 from the Plan Commission Director explaining why Mr. Walstra was allowed to do sand mining without a permit in 2005 confirmed his suspicions about Mr. Walstra. Second Am. Compl. ¶ 37. The information that the Plaintiff learned in 2017 does not change the fact that the "treatment" of the Plaintiff occurred in 2008 and that the Plaintiff was sufficiently aware of the Defendants' actions that harmed him at the time. This is not a case in which the claim did not accrue until a later date "when the violation only becomes apparent in light of later events." *See Savory*, 469 F.3d at 672 (discussing the continuing violation doctrine). In 2008, the Plaintiff had sufficient knowledge of his claim to allege that there was no rational basis for the denial of his subdivision plan. *See Miller*, 784 F.3d at 1120.

Nor does the allegation of a separate conspiracy claim under 42 U.S.C. § 1985(3) extend the limitations period. Section 1985(3) provides that anyone "deprived of having and exercising any right or privilege of a citizen of the United States" has an action for the recovery of damages against those who conspire to deprive him of that right. 42 U.S.C. § 1985(3). To recover under § 1985(3), a plaintiff must establish: "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000)). However, a "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). And § 1985(3)

13

claims are subject to the same two-year statute of limitations as § 1983 claims. *See Wilson v.*

*Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992) ("The same statute of limitations applies to claims

under § 1983 and § 1985(3).").

The damages the Plaintiff suffered over the years as a result of the denial of the

subdivision plan also do not delay the accrual of his claims. Those damages include the money

the Plaintiff lost in planning the subdivision, his subsequent bankruptcy, the conveyance of the

90 acres to his neighbor in 2011, and the removal of a ditch from that property in March 2015

that resulted in the Plaintiff learning on May 2, 2015, that he needed to obtain flood insurance.

All these damages are the "eventual *consequences*" of the alleged constitutional violation, not the

constitutional injury itself, and do not change the date that the limitations clock started. *See Amin*

*Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 491 (7th Cir. 2017) ("Ijbara confuses

the eventual *consequences* of a constitutional violation with the constitutional *injury* that starts

the limitations clock. Ijbara was well aware of his injury and its cause long before the entry of

final judgment in the foreclosure proceeding.").

*4.      Equitable Doctrines*

The Court next considers the Plaintiff's argument that "any limitations related to this

action were tolled because Defendant's actions were self-concealing." Pl.'s Br. 8–9. There are

two fundamental equitable doctrines that work to toll a limitations period: equitable tolling and

equitable estoppel. *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir.

2001).

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if
> despite the exercise of all due diligence he is unable to obtain vital information
> bearing on the existence of his claim. In contrast, the doctrine of equitable
> estoppel comes into play if the defendant takes active steps to prevent the plaintiff
> from suing in time, as by promising not to plead the statute of limitations.

*Id.* Because the statute of limitations for § 1983 claims is borrowed from state law, the

corresponding state equitable tolling rules apply, unless the state rules are inconsistent with the

purposes underlying § 1983. *See Moore v. Burge*, 771 F.3d 444, 447–48 (7th Cir. 2014) (citing

*Shropshear*, 275 F.3d at 596); *Logan*, 644 F.3d at 582; *Behavioral Inst. of Ind., LLC*, 406 F.3d at

932 (citing *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 485

(1980)).

    The Plaintiff's assertion that the Defendants' actions were "self-concealing" sounds in

the equitable estoppel doctrine of fraudulent concealment. Indiana state law permits tolling of the

statute of limitations under the doctrine of "equitable estoppel." *See Kenworth of Indianapolis,*

*Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 383 (Ind. 2019); *see also Logan*, 644 F.3d at 582

(citing *Behavioral Inst. of Ind., LLC*, 406 F.3d at 932). The doctrine is "typically linked to claims

of fraudulent concealment, but the doctrine also applies to other conduct that lulls a party into

inaction." *Kenworth*, 134 N.E.3d at 383 (alterations and internal quotation marks omitted)

(quoting *Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind. 1990)). Under Indiana law, "[t]he

doctrine of fraudulent concealment is available to estop a defendant from asserting the statute of

limitations when the defendant has, either by deception or by violating a duty, concealed from

the plaintiff material facts, preventing the plaintiff from discovering a potential cause of action."

*Logan*, 644 F.3d at 582 (citing *City of E. Chi. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611,

621–22 (Ind. 2009)).

    Here, the Plaintiff has not alleged facts in the Second Amended Complaint or argued in

the brief any such affirmative acts by the Defendants that prevented the Plaintiff from perceiving

his injury or timely filing his complaint. As detailed above, the Plaintiff was aware of Mr.

Walstra's sand mining activities in 2005, that the Plaintiff had complained about the sand

mining, that a cease and desist order was issued in 2005, that Mr. Walstra was able to convince

the Board to lift the order and continue sand mining in 2005, that the Drainage Board had

approved the Plaintiff's subdivision plan, and that the Planning Commission denied his

subdivision plan due to drainage issues in 2008. Thus, the Plaintiff was aware of all the

Defendant's activities that led to his injury—the denial of his subdivision plan—in 2008.

Although Mr. Walstra's sand mining in 2005 was not on the Plaintiff's property but rather an

adjacent property, the Plaintiff was nevertheless aware of Mr. Walstra's interest in sand mining

and his alleged influence over the Commissioners regarding the sand mining at that time.

Because the facts pleaded in the complaint establish that the Plaintiff's claims are time barred, "a

bare allegation of fraudulent concealment, without more, will not save the claim." *Logan*, 644

F.3d at 582.

Likewise, the doctrine of equitable tolling would not save the Plaintiff's claims. Equitable

tolling assumes that a plaintiff knows he has suffered a constitutional injury such that the statute

of limitations has begun to run, but the plaintiff "cannot obtain information necessary to decide

whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant.'" *Cada v.*

*Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). The doctrine "permits a plaintiff to

sue after the statute of limitations has expired if through no fault or lack of diligence on his part

he was unable to sue before, even though the defendant took no active steps to prevent him from

suing." *Savory*, 469 F.3d at 673 (quoting *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 561

(7th Cir. 1996)).[3] Again, the Plaintiff had the necessary information in 2008 to know that the

denial of his subdivision plan was due to the Defendant' alleged wrongdoing.

---

[3] It is not clear that Indiana state law provides for equitable tolling in this sense, but, if it does not, the federal standard "would apply to ensure 'the provision of a complete federal remedy under section 1983.'" *Taylor v. Witham*, No. 3:20-CV-589, 2020 WL 5365982, at *1, n.2 (N.D. Ind. Sept. 8, 2020)

Because the Plaintiff's federal constitutional claims accrued in 2008 and no equitable

doctrine tolls the applicable two-year statute of limitations, the Plaintiff's original Complaint,

filed in May 2017, is untimely. As a result, the Court does not reach the Defendants' alternate

argument that the Plaintiff fails to state a claim of an equal protection violation. The Court grants

the motion to dismiss Counts I and II with prejudice.

**C.      State Law Constitutional Claim**

The Court has supplemental jurisdiction over the state law claim in Count III alleging an

equal protection violation under the Indiana Constitution. "When all federal claims have been

dismissed prior to trial, the principle of comity encourages federal courts to relinquish

supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch.*

*Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). Although the decision to exercise supplemental

jurisdiction is discretionary, "there is a general presumption that the court will relinquish

supplemental jurisdiction and dismiss the state-law claims without prejudice." *Rivera v. Allstate*

*Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am.,*

*Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be

lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal

---

(quoting *Heck v. Humphrey*, 997 F.2d 355, 358 (7th Cir. 1993), *aff'd*, 512 U.S. 477 (1994)). In *Heck v. Humphrey*, the Seventh Circuit explained:

> We have not found any Indiana cases that recognize equitable tolling in so many words as a defense to a statute of limitations. However, *Torres v. Parkview Foods*, 468 N.E.2d 580 (Ind. Ct. App. 1984), holds that if a plaintiff in good faith files a diversity suit in federal district court but the suit is later held to be outside the diversity jurisdiction and is therefore dismissed without an adjudication of the merits, the statute of limitations for refiling the suit in state court is tolled. This is a form of equitable tolling, and the point emphasized by the court—that the filing of the suit, albeit in the wrong court, gave the defendant all the notice it needed—is equally applicable here. But should it turn out that Indiana would not apply equitable-tolling principles in the circumstances of the present case, this would be of no significance if, in that event, the federal doctrine would be applicable, and we think it would be.

997 F.2d at 357–59.

intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (internal

quotation marks and citation omitted).

Here, the Court is not compelled to retain supplemental jurisdiction. This case is at the

early pleading stages, and substantial judicial resources have not been committed to the state law

claim. Moreover, the parties have not fully briefed the issues relating to the state constitutional

claim, including whether the Plaintiff has a private right of action for damages, which are better

left to the state court. *See Cantrell v. Morris*, 849 N.E.2d 488, 499–500 (Ind. 2006) ("There is no

explicit language in the Indiana Constitution providing any specific remedy for violations of

constitutional rights."); *Smith v. Ind. Dep't of Corr.,* 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)

("No Indiana court has explicitly recognized a private right of action for monetary damages

under the Indiana Constitution."). Finally, the applicable state statute of limitations would not

have run during this litigation because the Indiana Journeyman's Account Statute "allow[s] the

plaintiff enough time to refile the same action in the correct forum." *Cox v. Am. Aggregates

Corp.*, 684 N.E.2d 193, 195 (Ind. 1997) (citing Indiana Code § 34-11-8-1). In addition, 28 U.S.C.

§ 1367(d) provides that the limitations period for a claim brought under § 1367(a) "shall be

tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law

provides for a longer tolling period." 28 U.S.C. § 1367(d); *see also Artis v. District of Columbia*,

138 S. Ct. 594, 598 (2018) (holding that "§ 1367(d)'s instruction to 'toll' a state limitations

period means to hold it in abeyance, i.e., to stop the clock"). For all these reasons, the Court

relinquishes supplemental jurisdiction over the state law claim.

## CONCLUSION

Based upon the foregoing, the Court GRANTS the Defendants' Motion to Dismiss

Plaintiff's Second Amended Complaint [ECF No. 36]. The Court DISMISSES the federal claims

in Counts I and II against all Defendants with prejudice as barred by the statute of limitations.

The Court DECLINES to exercise supplemental jurisdiction over the Plaintiff's state law claim

and DISMISSES without prejudice the state law claim in Count III.

SO ORDERED on February 5, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT